Mark R. Thierman, Nev. Bar No. 8285
mark@thiermanbuck.com
Joshua D. Buck, Nev. Bar No. 12187
josh@thiermanbuck.com
Leah L. Jones, Nev. Bar No. 13161
leah@thiermanbuck.com
THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, Nevada 89511
Tel. (775) 284-1500
Fax. (775) 703-5027

Attorneys for Plaintiff

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

JOAQUIN ROCES, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

RENO HOUSING AUTHORITY and DOES 1 through 50, inclusive,

Defendant(s).

Case No.:

**COLLECTIVE ACTION COMPLAINT**

1) Failure to Pay Wages for All Hours Worked in Violation of 29 U.S.C. § 201, et. seq;

2) Failure to Pay Overtime in Violation of 29 U.S.C. § 207;

3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;

**JURY TRIAL DEMANDED**

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

COMES NOW Plaintiff JOAQUIN ROCES ("Plaintiff"), on behalf of himself and all others similarly situated, and hereby alleges as follows:

All allegations in this Complaint are based upon information and belief except for those allegations that pertain to the Plaintiff named herein and his counsel. Each allegation in this Complaint either has evidentiary support or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

## JURISDICTION AND VENUE

1. This Court has original jurisdiction over the federal claims alleged herein pursuant to 28 U.S.C. § 1331, the federal question being the application and interpretation of the Fair Labor Standards Act (29 U.S.C. §216(b), hereinafter also referred to as the "FLSA"), which states, in part: "An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (***including a public agency***) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and others employees similarly situated."

2. This Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S. C. § 1367 because they all arise out of the same transaction and occurrence, i.e. the failure to properly pay all wages due.

3. Plaintiff has a private right of action for minimum wages for all hours worked pursuant to Section 16 of Article 15 of the Nevada State Constitution. Article 15, Section 16(B) of the Constitution of the State of Nevada states in relevant part: "An employee claiming violation of this section may bring an action against his or her employer in the courts of this State to enforce the provisions of this section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of this section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce this section shall be awarded his or her reasonable attorney's fees and costs."

4. Plaintiff and Defendant are residents of the State of Nevada.

5. Venue is proper in this Court because the Defendant named herein maintains its principal place of business, or otherwise is found, in this judicial district and the acts complained of herein occurred in Clark County.

**PARTIES**

6. Plaintiff JOAQUIN ROCES is natural person who is and was a resident of the State of Nevada and was employed by Defendant during the relevant times alleged herein.

7. Defendant RENO HOUSING AUTHORITY (hereinafter "DEFENDANT" or "RHA") is, upon information and belief, a municipal corporation under Chapter 315 Nevada Revised Statute. A municipal corporation does not enjoy sovereign immunity, and even if it did, the State of Nevada has waived sovereign immunity from suit for itself and ***all*** its political subdivisions for the claims alleged herein. See NRS 41.031.

8. The identity of DOES 1-50 is unknown at this time, and this Complaint will be amended at such time when the identities are known to Plaintiff. Plaintiff is informed and believes that each of the Defendants sued herein as DOE is responsible in some manner for the acts, omissions, or representations alleged herein and any reference to "Defendant," "Defendants," or "RHA" herein shall mean "Defendant and each of them."

**SUMMARY OF ALLEGATIONS**

9. Pursuant to an express agreement, partially written and partially oral, Defendant allowed Plaintiff to live in one of its apartments rent free in exchanged for performing work requested and required by the Defendant for the benefit of the Defendant.

10. The written portion of this agreement is called a "Live In" agreement, a copy of which is attached hereto as exhibit A.

11. The Fair Labor Standards Act (29 U.S.C. §206, hereinafter "FLSA") requires Defendant pay Plaintiff the federal ($7.25 per hour) minimum wage for all the time he was suffered or permitted to work.

**THIERMAN BUCK LLP**
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

12. Section 16 of Article 15 of the Nevada State Constitution requires Defendant to pay Plaintiff the state ($8.25 per hour in this case) minimum wage for all the time he was suffered or permitted to work.

13. The Fair Labor Standards Act (29 U.S.C. §207) also requires Defendant pay Plaintiff one and one half times his hourly "regular rate" for all hours worked after 40 in a workweek.

14. As more fully set forth hereinafter, work in exchange for housing is a "barter" or "in kind" arraignment that does not provide for the payment of minimum wages or overtime premium pay to the employee and is therefore not permitted under federal or state law.

15. The Live In agreement specifies that except for a two week vacation, and a few holidays per year, Defendant must work approximately forty hours a week, fifty weeks a year performing the functions of an assistant apartment manager without pay at all.

16. In addition, the agreement requires that the Plaintiff remain on site available to receive additional work assignments at the request and mandate of the Defendant for the benefit of the Defendant no less than 113 hours a week, consisting of thirteen hours a day for five days a week and "around the clock" on weekends and holidays. Defendant frequently receives additional work assignments after normal business hours and is not paid for either the standby time, or the time it takes to perform the additional assignments.

17. Thus, Plaintiff requires Defendant to work, or be on call, 153 hours a week without any pay.

18. There is no state law that allows for set off of housing or other "in kind" payments to employees against the state constitutional minimum wage amounts. NRS 608.155 is limited to meals and does not apply to the constitutional minimum wage.

19. Under federal law, housing allowances to offset minimum wage requirements are limited by federal regulations to the lower of the 1) actual cost of providing the housing or 2) fair market rental value of the housing provided. 29 C.F.R. § 531.3.

20. Under federal law, housing allowances to offset minimum wage requirements cannot be taken unless such board, lodging, or other facilities are customarily furnished by such employer to his employees ...” 29 U.S.C.A. § 203(m). Upon information and belief, Defendant does not customarily furnish free apartments to any of its other employees.

21. In addition, the cost of furnishing housing primarily for the benefit or convenience of the employer will not be recognized as reasonable and may not therefore be included in computing wages paid under the Fair Labor Standards Act. The reason Plaintiff provided housing for Defendant, while not providing housing for other employees, was for the convenience of the Defendant so that Plaintiff could perform the services of a watchman/guard as well as a maintenance employee, and to make sure Plaintiff was accessible to resolve tenant related issues 24/7. 29 C.F.R. § 531.3(d)(1).

22. According to Defendant’s own published listings for apartments in this and other complexes in the Reno-Sparks area, the maximum rental value for any apartment (two bedrooms or less) provided to a live in in exchange for work would be $600 a month. Thus, $600 a month is the maximum value the employer may claim under the regulations pursuant to the first proviso of 29 C.F.R. § 531.3(c), or less if the actual costs to Defendant are less.

23. Even if the Plaintiff worked only 40 hours a week, the hourly rate for this in kind payment would be only $3.47 an hour, or less, which is less than the minimum state or federal minimum wage.

24. Based upon the work hours required by the Live In agreement, the hourly rate for this in kind payment would be only 93 cents an hour, or less, which is less than the minimum state or federal minimum wage.

**FACTUAL ALLEGATIONS**

25. As stated in its website, Defendant RHA currently owns and manages 764 units of Public Housing (475 for families) in seven different locations in the City of Reno and Sparks under the Public Housing programs and, through the use of the Neighborhood Stabilization Programs and other funding, owns over 100 rental properties specifically targeted for low income households.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

26. Pursuant to a written agreement, a copy of which is attached as exhibit A and incorporated by reference as if fully set forth herein, Defendant allowed Plaintiff to occupy one of these units located at 701 Saint Arms Circle, Reno, Nevada 89506, said occupancy to be free of rent in exchanged for Plaintiff performing work required by the Defendant, for the benefit of the Defendant.

27. At all times relevant herein, the fair market rental value of the apartment furnished to Plaintiff and other "Live Ins" never exceeded $600 a month, based upon Defendant's advertised rates for a two bedroom unit at similar locations. Nor did the actual cost of providing this housing exceed $600 a month.

28. Dividing $600 a month by the number of non-overtime hours in a work-month equals $3.47 an hour, significantly below both state and federal minimum wages.

29. Dividing $600 a month by the number of hours required by the Live In Agreement to be worked in a work-month equals 92 cents per hour, significantly below both state and federal minimum wages.

30. In exchange for the zero rent apartment, Plaintiff and all other "Live Ins" were required to perform certain duties for the benefit of the employer.

31. These duties constitute compensable "work" as that term is defined under both federal and state law.

32. In addition to working 40 hours a week, Defendant required Plaintiff to be "on call" to perform the same or similar tasks as its regular work at the request of the Defendant for the benefit of the Defendant another 113 hours per week without any additional compensation.

33. Plaintiff was frequently and regularly called during this on call time, at no pay, to perform these additional tasks. The conditions of the on call time was so restrictive that Plaintiff could not engage in normal non-working activities. Specifically, during this on call time, Plaintiff required Defendant to remain on site or be within 15 minutes of actual responding to a call to return to the site, so that Defendant could not obtain another job, could not go to the movies, could not visit friends away from the complex, and could not engage in normal free time activities.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

34. As more fully set forth in the written agreement, these duties basically were of the nature of a watchman/guard and a handyman/maintenance person during the on call times.

35. The written agreement states, in part, as follows:

> This agreement is between the Reno Housing Authority, hereinafter referred to as "RHA," and Joaquin Roces, hereinafter referred to as the "Live-In." RHA and the Live-In agree as follows:
>
> 1. RHA will permit the Live-In to occupy unit number [redacted] at 701 Saint Arms Circle, Reno, Nevada 89506, said occupancy to be free of rent.
>
> 2. In consideration of the above, the Live-In will provide services to RHA for the Essex Manor and Yorkshire Terrace housing developments, hereinafter referred to as "Housing Development," as follows:
>
> A. The Live-In will be available to answer, respond to and take appropriate action in a timely manner with respect to any emergency call received during the hours of 6:00 p.m. to 7:00 a.m., Monday through Friday. On Saturdays, Sundays and holidays, the Live-In will be on call around the clock.
>
> B. The Live-In shall perform daily inspections of the housing development with specific attention to exterior lighting, security of vacant units, vehicle violations and identifying and reporting any tenant activity that is contrary to the rules and regulations of RHA.
>
> C. The Live-In shall perform occasional cleanup of those areas in the assigned development designated by the Asset Manager, including snow removal at any handicapped units. In any event, it shall be the responsibility of the Live-In to keep the designated areas in a clean and safe condition at all times and to immediately report any discrepancies to the Asset Manager.
>
> D. The Live-In must either be on premises or close enough to respond within no more than 15 minutes and be available to perform emergency work and to provide the services set forth above during the hours hereinbefore set forth.
>
> 3. In addition to receiving the right to occupy the dwelling unit described above for zero rent, the Live-In person shall not be required to carry out these duties on:
>
> A. Six legal holidays per year
> B. Five complete weekends each year

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

C. Two full work weeks each year (Monday - Friday)

The request to be off duty on these dates must be made and approved in writing by the Asset Manager at least seven days in advance. In addition thereto, up to eight days off for sickness may be allowed in any calendar year.

The Live-In will receive no compensation or other consideration for any of the above days not utilized by the end of the one year lease period, nor shall such days off accrue beyond the end of the one year lease period. (September 1, 2014 to August 31, 2015)

4. The Live-In agrees and stipulates that his/her occupation of the dwelling unit is a "Tenancy at Will" and agrees to vacate said unit within five days of receipt of the Notice to Vacate from RHA.

## COLLECTIVE ACTION ALLEGATIONS

36. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

37. Plaintiff brings this action on behalf of himself and all other similarly situated and typical employees as a collective action under the FLSA

38. The statute of limitations under the FLSA is 3 years for willful violations.

39. Plaintiff brings this action on behalf of himself and on behalf of the following individuals: "**All individuals who signed a "Live In" agreement with Defendant Reno Housing Authority within three years of the filing of this complaint, and who file a consent to join in this action as required by Section 16(b) of the Fair Labor Standards Act.**"

40. With regard to the conditional certification mechanism under the FLSA, Plaintiff is similarly situated to those that she seeks to represent for the following reasons, among others:

A. Defendant employed Plaintiff and approximately ten to twenty other individuals under the terms of a "live in" agreement, a copy of which is attached hereto as exhibit A.

B. All "Live Ins" received housing on site in a rental unit at no cost in exchange for performing the duties specified in the attached "Live In" Agreement, Exhibit A.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

C. As can be seen from exhibit A, the Live-Ins performed the duties of both watchmen/security guards and tenant handymen/maintenance workers.

D. As stated by the written agreement, exhibit A, all "Live Ins" were required, suffered or permitted to work at least 13 hours a day for five days a week, and 24 hours a day on all Saturdays, Sundays and holidays. The "Live Ins" were required by the Defendant to be on premises or close enough to respond within no more than 15 minutes and be available to perform emergency work and to provide the services set forth above during the hours set forth in the agreement. During the hours that they were required to be on site, the Live Ins were constantly busy performing their assigned tasks.

E. In addition, the Live Ins were required, suffered or permitted to perform additional tasks for the benefit of the Defendant.

F. Based upon the published rental rates for a two bedroom apartment at Defendant's various locations in the Reno area, the maximum fair market rental rate for the apartment occupied by a "Live In" would be $600 a month or less.

G. All Live Ins received no pay for all hours that Defendant suffered or permitted them to work, and did not receive overtime premium pay of one and one half their regular rate of pay for all hours worked over forty (40) hours in a workweek.

H. Plaintiff's situations is similar to those she seeks to represent because Defendant failed to pay Plaintiff and all other Class Members for all time they worked.

I. Common questions exists as to the amount of wages owed under both state and federal law and whether any credit against wages owed would be allowed for the rental value of lodging furnished by Defendant..

J. Upon information and belief, Defendant employs, and has employed, ten to twenty collective Class Members within the applicable statute of limitations.

K. Plaintiff has filed or will file her consent to sue with the Court.

L. Defendant has known or should have known that it did not comply with the laws of the State of Nevada and federal wage laws by failing to pay for services and by using a barter system to circumvent the obligations of an employer.

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

M. Willfulness is a common question for all opt in class members because it focuses on the Defendant's state of mind. Even if the law allowed the use of "in kind" payments by providing housing for work, which it does not, the value of the rental unit furnished divided by the hours the Defendant required the "Live Ins" to work was less than an dollar an hour, so flagrantly below any living wage that any reasonable person would know that this arrangement was morally as well as legally wrong. Demanding that each Live In devote 153 hours a week of time to Defendant effectively means the "Live Ins" are precluded from finding other work, but risk becoming homeless if they refuse to devote this time to performing tasks for Defendant. Furthermore, it is unconscionable that a quasi-governmental agency should become a prime example of the underground economy in our state, using a barter system to avoid workers compensation payments, social security taxes, unemployment insurance, other payroll taxes and the obligations of our society while extracting labor from those least able to protect themselves. Defendants has willfully failed to pay their employees properly.

14. Plaintiff reserves the right to amend this complaint to allege a true class action pursuant to FRCP Rule 23 should it learn that the class is sufficiently numerous to benefit from class action treatment.

**FIRST CAUSE OF ACTION**

**Failure to Pay Wages in Violation of the FLSA, 29 U.S.C. § 201, *et seq*.)**

15. Plaintiff realleges and incorporates by reference all the paragraphs above in this Complaint as though fully set forth herein.

16. Pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*, Plaintiff and Class Members are entitled to compensation at their regular rate of pay or minimum wage rate, whichever is higher, for all hours actually worked.

17. 29 U.S.C. § 206(a)(l) states that "Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates: (1) except as otherwise provided in this section, not

less than (A) $5.85 an hour beginning on the 60th day after the enactment of the Fair Minimum Wage Act of 2007; (B) $6.55 an hour, beginning 12 months after that 60th day; and C) $7.25 an hour, beginning 24 months after that 60th day."

18. Once the workday has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's regular rate of pay, whether scheduled or not.

19. By stealing Plaintiff and Class Members' hours, Defendant failed to pay Plaintiff and the Class Members for all the hours they worked.

20. Defendant's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices have been unlawful and unfair. Working employees for less than 92 cents an hour by making "in kind" payments of free housing in lieu of paying wages and making contributions for social programs like social security, disability, workers compensation and the like is a flagrant example of a public agency engaging in the underground economy which the public agencies are charged with preventing, and therefore, sufficient for a three (3) year statute of limitations.

21. Wherefore, Plaintiff demands for himself and for all others similarly situated, that Defendant pay Plaintiff and all other members of the Class their minimum hourly wage rate or their regular rate of pay, whichever is greater, for all hours worked during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

**SECOND CAUSE OF ACTION**

**Failure to Pay Overtime Wages in Violation of the FLSA, 29 U.S.C. § 207**

22. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

23. 29 U.S.C. Section 207(a)(1) provides as follows: "Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

24. Once the workday has begun, all time suffered or permitted by the employer to be worked by the employee is compensable at the employee's regular rate of pay, whether scheduled or not.

25. By failing to pay Plaintiff and Class Members overtime for all hours worked in excess of forty (40) hours in a week, Defendant has violated 29 U.S.C. Section 207(a)(1).

26. Defendant's unlawful conduct has been widespread, repeated, and willful. Defendant knew or should have known that its policies and practices have been unlawful and unfair. .

27. Wherefore, Plaintiff demands for himself and for all others similarly situated, that Defendant pay Plaintiff and all members of the Class one and one half times the minimum wage, or their regular hourly rate of pay, whichever is greater, for all hours worked in excess of forty (40) hours a week during the relevant time period alleged herein together with liquidated damages, attorneys' fees, costs, and interest as provided by law.

**THIRD CAUSE OF ACTION**

**Failure to Pay Minimum Wages in Violation of the Nevada State Constitution**

28. Plaintiff realleges and incorporates by this reference all the paragraphs above in this Complaint as though fully set forth herein.

29. Article 15, Section 16(A) of the Constitution of the State of Nevada states: Each employer shall pay a wage to each employee of not less than the hourly rates set forth in this section. The rate shall be five dollars and fifteen cents ($5.15) per hour worked, if the employer provides health benefits as described herein, or six dollars and fifteen cents ($6.15) per hour if the employer does not provide such benefits. Offering health benefits within the meaning of this section shall consist of making health insurance available to the employee for the employee and the employee's dependents at a total cost to the employee for premiums of not more than 10 percent of the employee's gross taxable income from the employer. These rates of wages shall be

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

adjusted by the amount of increases in the federal minimum wage over $5.15 per hour, or, if greater, by the cumulative increase in the cost of living. The cost of living increase shall be measured by the percentage increase as of December 31 in any year over the level as of December 31, 2004 of the Consumer Price Index (All Urban Consumers, U.S. City Average) as published by the Bureau of Labor Statistics, U.S. Department of Labor or the successor index or federal agency. No CPI adjustment for any one-year period may be greater than 3%. The Governor or the State agency designated by the Governor shall publish a bulletin by April 1 of each year announcing the adjusted rates, which shall take effect the following July 1. Such bulletin will be made available to all employers and to any other person who has filed with the Governor or the designated agency a request to receive such notice but lack of notice shall not excuse noncompliance with this section. An employer shall provide written notification of the rate adjustments to each of its employees and make the necessary payroll adjustments by July 1 following the publication of the bulletin. Tips or gratuities received by employees shall not be credited as being any part of or offset against the wage rates required by this section.

30. At all times relevant herein, Defendant did not provide Plaintiff health insurance.

31. At all times relevant herein, the Nevada Constitutional Minimum wage applicable to Plaintiff and all class members was $8.25 an hour.

32. Because there is no explicit statute of limitations for violation of a constitutional mandate, the four year "catch all" statute of NRS 11.220 applies.

33. Article 15, Section 16(C) of the Constitution of the State of Nevada states: "As used in this section, "employee" means any person who is employed by an employer as defined herein but does not include an employee who is under eighteen (18) years of age, employed by a nonprofit organization for after school or summer employment or as a trainee for a period not longer than ninety (90) days. "Employer" means any individual, proprietorship, partnership, joint venture, corporation, limited liability company, trust, association, or other entity that may employ individuals or enter into contracts of employment."

34. None of the exceptions to the definition of employee contained in the constitution applies to Plaintiff.

35. Defendant Reno Housing Authority employs and enters into contracts of employment with many people, including by not limited to, managers, office personal, grounds keepers and others.

36. NRS 608.016 says "An employer shall pay to the employee wages for each hour the employee works. An employer shall not require an employee to work without wages during a trial or break-in period."

37. Nevada Administrative Code (hereinafter "NAC") 608.115 states 1. An employer shall pay an employee for all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee. [and] 2. If an employer pays an employee by salary, piece rate or any other wage rate except for a wage rate based on an hour of time, the employer shall pay an amount that is at least equal to the minimum wage when the amount paid to an employee in a pay period is divided by the number of hours worked by the employee during the pay period. This subsection does not apply to an employee who is exempt from the minimum wage requirement pursuant to NRS 608.250.

38. As a result of Defendant's breach, Plaintiff and Class Members have suffered economic loss that includes lost wages in the form of regular rate and overtime wages, plus interest over the last 4-years.

Wherefore, Plaintiff demands for himself and for all Class Members that Defendant pay Plaintiff and Class Members their agreed upon rate of pay for all hours that were unlawfully shaved for four (4) years from the date of filing this complaint until a judgment is entered in this case, together with attorney's fees, costs, and interest as provided by law.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff, individually and on behalf of Class Members and all others similarly situated, prays for relief as follows:

1. For an order conditionally certifying this action under the FLSA and providing notice to all members of the Class so they may participate in this lawsuit;
2. For an order certifying this action as a class action on behalf the proposed Class;

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

THIERMAN BUCK LLP
7287 Lakeside Drive
Reno, NV 89511
(775) 284-1500 Fax (775) 703-5027
Email info@thiermanbuck.com www.thiermanlaw.com

3. For an order appointing Plaintiff as the Representatives of the Class and his counsel as Class Counsel;

4. For damages according to proof for regular rate pay under federal laws for all hours worked;

5. For damages according to proof for minimum rate pay under federal law for all hours worked;

6. For damages according to proof for overtime compensation under federal law for all hours worked over 40 per week;

7. For liquidated damages pursuant to 29 U.S. C. § 216(b);

8. For damages pursuant to Defendant's breach of contract;

9. For interest as provided by law at the maximum legal rate;

10. For an order directing the clerk of the court to issue a writ of attachment and thereby cause the property of Defendant to be attached as security for the satisfaction of any judgment that may be recovered pursuant to NRS 31.010.

11. For reasonable attorneys' fees authorized by statute;

12. For costs of suit incurred herein;

13. For pre-judgment and post-judgment interest, as provided by law; and

14. For such other and further relief as the Court may deem just and proper.

Dated this 11th day of August, 2015.

THIERMAN BUCK LLP

By: /s/Joshua D. Buck
MARK R. THIERMAN
JOSHUA D. BUCK
LEAH L. JONES
*Attorneys for Plaintiff*

# EXHIBIT A

EXHIBIT A

This agreement is between the Reno Housing Authority, hereinafter referred to as "RHA," and **Joaquin Roces**, hereinafter referred to as the "Live-In." RHA and the Live-In agree as follows:

1. RHA will permit the Live-In to occupy unit number 611 at 701 Saint Arms Circle, Reno, Nevada 89506, said occupancy to be free of rent.

2. In consideration of the above, the Live-In will provide services to RHA for the Essex Manor and Yorkshire Terrace housing developments, hereinafter referred to as "Housing Development," as follows:

   A. The Live-In will be available to answer, respond to and take appropriate action in a timely manner with respect to any emergency call received during the hours of 6:00 p.m. to 7:00 a.m., Monday through Friday. On Saturdays, Sundays and holidays, the Live-In will be on call around the clock.

   B. The Live-In shall perform daily inspections of the housing development with specific attention to exterior lighting, security of vacant units, vehicle violations and identifying and reporting any tenant activity that is contrary to the rules and regulations of RHA.

   C. The Live-In shall perform occasional clean up of those areas in the assigned development designated by the Asset Manager, including snow removal at any handicapped units. In any event, it shall be the responsibility of the Live-In to keep the designated areas in a clean and safe condition at all times and to immediately report any discrepancies to the Asset Manager.

   D. The Live-In must either be on premises or close enough to respond within no more than 15 minutes and be available to perform emergency work and to provide the services set forth above during the hours hereinbefore set forth.

3. In addition to receiving the right to occupy the dwelling unit described above for zero rent, the Live-In person shall not be required to carry out these duties on:

   A. Six legal holidays per year
   B. Five complete weekends each year
   C. Two full work weeks each year (Monday – Friday)

   The request to be off duty on these dates must be made and approved in writing by the Asset Manager at least seven days in advance. In addition thereto, up to eight days off for sickness *may* be allowed in any calendar year. The Live-In will receive no compensation or other consideration for any of the above days not utilized by the end of the one year lease period, nor shall such days off accrue beyond the end of the one year lease period. (September 1, 2014 to August 31, 2015)

4. The Live-In agrees and stipulates that his/her occupation of the dwelling unit is a "Tenancy at Will" and agrees to vacate said unit within five days of receipt of the Notice to Vacate from RHA.

5. This Agreement may be terminated by either party at any time by giving five days notice of termination. The notice of termination will also serve as a Notice to Vacate the unit in accordance with applicable Nevada law.

6. The Security Deposit may be used by RHA at the termination of this Tenancy at Will toward the costs of repairing any intentional or negligent damages to the dwelling unit and cleaning of the premises necessitated by the Live-In, members of his/her household or guests and deferring any other charges owed by the Live-In.

   RHA agrees to return the Security Deposit within three weeks to the Live-In when he/she vacates, less any

deductions for any of the costs indicated above. If such deductions are made, RHA will give the Live-In a written statement of any such costs for damages and/or other charges deducted from the Security Deposit.

The Live-In shall pay reasonable charges for maintenance and repair beyond normal wear and use, and for cleaning and fumigation rendered necessary by the acts or neglects of the Live-In, in accordance with the Schedule of Rents for services and repairs posted in RHA offices. Such charges shall be billed to the Live-In and shall specify the items and damages involved, correctional action taken and the cost thereof. Charges assessed the Live-In by RHA for maintenance and repairs shall become due and payable on the first day of the second month following the month in which the charges are incurred.

The Live-In also agrees to pay, as billed, the monthly charges incurred for the following utilities and services: electricity, gas, water, cable, and telephone. When the Live-In leaves their unit or the premises, they must have a working cellular phone on their person and remain close enough to the development to respond to any calls for service within no more than 15 minutes when on duty. Any exceptions must be cleared in advance with the Asset Manager. Anyone not responding in this time period will be in violation of this agreement and subject to having their lease terminated.

7. The Live-In agrees to abide by the following rules and obligations while residing in the dwelling unit:

   A. Not to assign or sublease the premises;

   B. Not to provide accommodation for boarders or lodgers;

   C. To use the premises solely as a private dwelling unit for the Live-In and members of his/her household and in conjunction with the discharge of his/her obligations under this Agreement. Live-In's guests or visitors may stay for up to three days, or a longer period if approved in writing by RHA.

   D. To abide by necessary and reasonable regulations promulgated by RHA for the benefit and well being of the housing development and its tenants, which shall be posted in the RHA offices and which are incorporated by reference in this Agreement;

   E. To comply with obligations imposed upon Tenants by applicable provisions of Buildings and Housing Codes materially affecting health and safety;

   F. To keep the building and equipment in a clean and sanitary condition and to refrain from moving into the dwelling unit any furniture or furnishing which are not in a sanitary condition;

   G. To keep the premises and such other areas as may be assigned to the Live-In in a clean and safe condition, including snow removal;

   H. To comply with RHA policy prohibiting waterbeds in all dwelling units.

   I. To dispose of all garbage, rubbish and other waste from the premises in a sanitary and safe manner;

   J. To maintain utility service in Live-in's name for all utilities.

   K. To use only in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning and other facilities and appurtenances;

   L. To refrain from and to cause his/her household guests to refrain from destroying, damaging, or removing any part of the premises or developments; and to accept responsibility for such acts resulting in a loss to RHA;

M. To pay reasonable charges (other than for ordinary wear and use) for the repair of damages to the premises, development buildings, facilities or common areas caused by Tenant or any guests.

N. To refrain from waste or excessive use of water, gas or other fuel or utility services;

O. To refrain from bringing or storing trailers or other non-operating vehicles on the premises;

P. To abide by RHA vehicle registration policy and procedures.

Q. To conduct himself/herself and cause other persons who are on the premises, with consent of the Live-In, to conduct themselves in a manner which will not disturb his/her neighbor's peaceful enjoyment of their accommodations and of the common areas of the housing development, and will be conducive to maintaining the development in a decent, safe and sanitary condition;

R. To not engage in criminal activities in the dwelling unit or on the property of the housing development, and to prevent criminal activities in the unit or on the property of the housing development by guests, visitors, or other persons under the control of or the invitees of Live-In or household members.

S. Not to display on or about the premises any advertisements for goods or services without prior written approval of RHA.

T. Not to make any repairs or alterations, nor to install any major appliances, such as air conditioners, dryers, television aerials, etc., without the prior written consent of RHA.

U. Not to engage in any drug-related criminal activity on or off the premises.

V. Not to illegally use a controlled substance.

W. Not to abuse alcohol so that it interferes with the health, safety, or right to peaceful enjoyment of the premises by other residents.

X. Not to commit any act of physical violence against persons or unlawful damage to the property of the Housing Authority or of tenants or employees of the Housing Authority.

Y. To refrain from illegal or other activities which impair the physical or social environment of the development.

Z. Live-in must maintain telephone service and must have a working cellular phone in their possession whenever they leave their unit or development when on call.

AA. **Barbeques prohibited** – the storage and use of any and all open flame cooking devices and propane or gas-fueled cooking devices on porches, patios, planter areas and sidewalks adjacent to all buildings is prohibited. Examples of prohibited devices include, but are not limited to, open fire barbecues, hibachis, and any other types of broiling equipment using coal, charcoal, wood, propane or gas.

BB. **Outdoor Electric Grills** – may be used on patios and porches, as long as there is an appropriate GFCI (Ground Fault Current Interrupter) outlet on the patio or porch. Contact your manager if you have any questions.

8. The Live-In agrees that RHA may enter the dwelling unit as follows: RHA shall, upon a reasonable advanced notification to the Live-In, be permitted to enter the dwelling unit during reasonable hours for the purpose of performing routine inspections and maintenance, for making improvements or repairs or to show the premises for releasing. RHA may enter the premises at any time without advanced notification when there is reasonable cause to believe that an emergency exists.

9. In the event that either party initiates any legal action or proceeding to enforce its rights under this Contract, or in the event that the Housing Authority is obliged to initiate an action to evict the Live-In due to his/her failure to vacate the premises pursuant to Paragraph 4 of this Agreement, then the prevailing party will be entitled to recover its costs and attorney's fees incurred in said proceedings. The Live-In grants the Housing Authority the right to offset any such fees and charges against the Security Deposit set forth in Paragraph 6.

10. The Agreement may be canceled on 48 hours notice if the information received from the Authority's inquiry with respect to driving records, employment history, criminal history, reference and substance abuse is unacceptable to the Authority.

Executed in Reno, Washoe County, Nevada, to be effective September 1, 2014.

DAVID C. MORTON
Executive Director

Joaquin Roces SSN 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
Live-In
Cell (775) 971-8417