# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JOAQUIN ROCES et al.,

    Plaintiffs,

vs.

RENO HOUSING AUTHORITY et al.,

    Defendants.

3:15-cv-0408-RCJ-WGC

**ORDER**

This case arises out of a labor dispute between Plaintiffs Joaquin Roces, Juan Lopez, and Judith Lopez, and Defendant Reno Housing Authority ("RHA"). Plaintiffs allege that Defendant violated the Fair Labor Standards Act ("FLSA") by providing only free housing as compensation for their work as "live-ins" rather than paying a minimum wage and overtime. They have filed this suit as a collective action on behalf of all others similarly situated. Pending before the Court is a Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) (ECF No. 18). Plaintiffs ask the Court to order that notice of this action be given to individuals similarly situated to Plaintiffs, and to give those putative plaintiffs an opportunity to file written consents to join the suit. For the reasons given herein, the Court denies the motion.

**I.    FACTS AND PROCEDURAL HISTORY**

Plaintiffs are three individuals who entered "live-in" agreements with Defendant RHA. Plaintiff Joaquin Roces and Defendant entered a "Live-In Agreement" for the period of

September 1, 2014 to August 31, 2015. (Agreement, 20–24, ECF No. 16). Under the agreement, Roces was allowed to live in one of Defendant's units free of rent, and the agreement provided for no other form of compensation. (*Id.* at 21). Roces was responsible for responding to emergency calls, inspecting the premises, reporting vehicle violations and impermissible tenant activity, and performing occasional clean up and snow removal. (*Id.*). He was required to be available to respond to emergency calls received from 6:00 p.m. to 7:00 a.m., Monday through Friday, and on the weekends and holidays he was "on call around the clock." (*Id.*). In addition, the agreement required him to "either be on premises or close enough to respond within no more than 15 minutes." (*Id.*).

Plaintiffs Juan Lopez and Judith Lopez entered agreements with Defendant similar to Roces's agreement. (Decl. of Juan Lopez, ¶¶ 4–5, ECF Nos. 18-5; Decl. of Judith Lopez, ¶¶ 4–5, ECF No. 18-6). They were required to work the same hours as Roces and to perform similar duties. (Decl. of Juan Lopez, ¶¶ 7–12; Decl. of Judith Lopez, ¶¶ 8–13). Defendant "currently owns and manages approximately 764 public housing units in multiple locations." (Answer to First Am. Compl., ¶ 18, ECF No. 28). Plaintiffs assert that Defendant has employed ten to twenty other individuals under the terms of a live-in agreement with the same duties and benefits as Plaintiffs' agreements. (First Am. Compl., ¶ 46, ECF No. 16).

Plaintiffs claim that Defendant violated federal and state laws by failing to pay Plaintiffs minimum wage and overtime for the hours they worked. They have filed this suit as a collective action on behalf of all others similarly situated. Plaintiffs move the Court, pursuant to 29 U.S.C. § 216(b), to order that notice of this action be given to individuals similarly situated to Plaintiffs, and to give those putative plaintiffs an opportunity to file written consents to join the suit.

///

## II. LEGAL STANDARDS

The FLSA requires employers to pay their employees a "minimum wage," 29 U.S.C. § 206, and to pay nonexempt employees "not less than one and one-half times the regular rate at which he is employed" for overtime work they perform. *Id.* at § 207(a). One or more employees may seek to recover unpaid compensation from an employer "for and in behalf of himself or themselves and other employees similarly situated." *Id.* at § 216(b). The courts commonly refer to this type of representative action as a "collective action," *see, e.g.*, *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989), as opposed to a "class action" under Federal Rule of Civil Procedure 23. *See McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007) (discussing the differences between a class action and a collective action). To become a party to a collective action seeking unpaid wages, each employee must opt into the suit by giving written consent. 29 U.S.C. § 216(b).

To certify a collective action under the FLSA, a court must determine whether the lead plaintiff(s) and the proposed collective action group are "similarly situated" for purposes of § 216(b). The FLSA does not define the term "similarly situated," and the Ninth Circuit and Supreme Court have not interpreted the term or outlined a process for certifying a collective action. However, a number of courts, including this one, have adopted a two-stage approach for certifying a collective action.[1] *See, e.g.*, *Walden v. Nevada*, No. 3:14-CV-0320, 2015 WL 1186707, at *1–2 (D. Nev. Mar. 16, 2015); *Garcia v. Interstate Plumbing & Air Conditioning, LLC*, No. 2:10-CV-410, 2011 WL 468439, at *3–4 (D. Nev. Feb. 4, 2011); *Sarviss v. Gen. Dynamics Info. Tech., Inc.*, 663 F. Supp. 2d 883, 902–04 (C.D. Cal. 2009).

---

[1] Other courts have adopted varying approaches, but the two-stage approach is the most common and, according to the Tenth Circuit, the best one. *See Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103–1105 (10th Cir. 2001) (discussing three different approaches district courts use to certify a collective action and identifying the two-stage approach as "arguably the best of the three approaches").

At the first stage, or the notice stage, "the court considers whether to certify a collective action and permit notice to be distributed to putative class members." *Sarviss,* 663 F.Supp.2d at 903 (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir.2001)). The court's decision is "based primarily on the pleadings and any affidavits submitted by the parties." *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 467 (N.D. Cal. 2004). A fairly lenient standard applies and "typically results in conditional class certification." *Id.* At this stage, a plaintiff must make only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Sarviss*, 663 F.Supp.2d at 903 (quoting *Thiessen*, 267 F.3d at 1102). A plaintiff must show only that his or her position is similar, not identical, to the positions of the putative class members. *Walden*, 2015 WL 1186707, at *1. District courts have discretion in determining whether to authorize notice to potential plaintiffs of a collective action. *McElmurry*, 495 F.3d at 1139.[2]

The second stage occurs once discovery is complete. *Sarviss,* 663 F.Supp.2d at 903. At this stage, "the party opposing class certification may move to decertify the class." *Leuthold*, 224 F.R.D. at 467. Courts then use a stricter standard to determine whether the putative class members are "similarly situated" under section 216(b) by considering the following factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendants with respect to the individual plaintiffs; and (3) fairness and procedural considerations." *Id.* If the court determines that the plaintiffs are not similarly

---

[2] Discretion is appropriate because "only those plaintiffs who expressly join the collective action are bound by its results," *McElmurry*, 495 F.3d at 1139, and, consequently, "giving notice to potential plaintiffs of a collective action has less to do with the due process rights of the potential plaintiffs and more to do with the named plaintiffs' interest in vigorously pursuing the litigation and the district court's interest in 'managing collective actions in an orderly fashion.'" *Id.* (quoting *Hoffmann–La Roche,* 493 U.S. at 173).

situated, "then the court may decertify the class and dismiss the opt-in plaintiffs without prejudice." *Id.*

### III. ANALYSIS

Plaintiffs allege that Defendant has employed at least one individual per year at each of its eight housing locations under a live-in agreement similar to the agreement made between Plaintiffs and Defendant. Plaintiffs wish to designate as the putative class any person who has "entered into a Live In Agreement with Defendant, Reno Housing Authority at any time from August 11, 2012 to the present." (Am. Proposed Notice, 14, ECF No. 30).

Plaintiffs have not made substantial allegations that they are similarly situated to the putative class members as victims of a single decision, policy, or plan. The individual cases for Plaintiffs and the putative plaintiffs share a common question of law; namely, whether a live-in whose compensation consists solely of free rent is subject to FLSA's jurisdiction. Their cases also share some common facts. For example, Plaintiffs Juan Lopez and Judith Lopez have signed declarations stating they entered an agreement with Defendant similar to the agreement Roces entered. (Decl. of Juan Lopez, ¶¶ 4–5, ECF Nos. 18-5; Decl. of Judith Lopez, ¶¶ 4–5, ECF No. 18-6).[3] Their agreements required them to follow the same work schedule as Roces and to perform similar duties. (Decl. of Juan Lopez, ¶¶ 7–12; Decl. of Judith Lopez, ¶¶ 8–13). Plaintiffs assert that "Defendant employed Plaintiffs and approximately ten to twenty other individuals under the terms of a 'live in' agreement" with the same duties and benefits as Plaintiffs' agreements. (FAC, ¶ 46). According to Plaintiffs Juan Lopez and Judith Lopez, "all Live Ins had the same or substantially similar duties." (Decl. of Juan Lopez, ¶ 11; Decl. of Judith Lopez, ¶ 12).

---

[3] Both declarations state: "Although I cannot currently locate[] the Live In Agreement I signed, I have reviewed Mr. Roces' Agreement and it is similar." (*Id.*).

Although Plaintiffs' allegations recognize these commonalities, they fall short in making substantial allegations that Plaintiffs are similarly situated to the putative class members. To begin, Plaintiffs fail to address the varied circumstances inherent in the work the putative class members perform at multiple properties. Even if the putative class members have similar agreements, their actual duties likely vary substantially. Defendant hires live-ins to work at various locations where the number of units and tenants varies, along with the condition and quality of each property. The frequency of inspections and responses to maintenance calls and emergency calls will vary from property to property. The residents of each property will have developed community-specific habits in how they interact with a live-in and in the magnitude and complexity of demands they place upon a live-in. For instance, during a hearing on this motion, Plaintiffs' counsel recounted how in one community the residents intentionally wait until after 6:00 p.m. to contact the live-in with maintenance requests rather than submit requests to maintenance staff because they know the live-in will respond more promptly. The unique habits and demands of each community will create substantially varying duties and roles among live-ins.

The varying circumstances at each community require, and the live-in agreements allow, discretion in choosing how to perform duties. For instance, when live-ins receive a maintenance request, they may choose whether to address the request directly or relay it to maintenance staff. In addition, live-ins may choose how often to perform inspections and clean up, and how to perform those duties. Live-ins enjoy great discretion in how they use their time. They are required to be available during the week from 6:00 p.m. to 7:00 a.m., and they are "on call around the clock" on weekends and holidays, (Agreement, 21); however, their agreement does not specify where live-ins must physically be during that time or what they must do from hour to hour; it simply requires them to be able to respond within fifteen minutes (*id.*). Live-ins choose

whether to work, sleep, eat, shop, or even hold another job while they are on the clock, so long as they can respond within the required time-frame. Their agreements afford them ample discretion, which likely produces greatly varying work habits.

The Supreme Court has held that a policy of giving local supervisors discretion over employment matters diluted the commonality required for a class action. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2554 (2011). Although some courts have chosen not to apply *Dukes* to Section 216(b) cases, *see Lillehagen v. Alorica, Inc.*, No. 13-0092, 2014 WL 2009031, at *6-7 (C.D. Cal. May 15, 2014) (discussing cases that have applied *Dukes* to Section 216(b) and those that have not); *Mitchell v. Acosta Sales, LLC*, 841 F. Supp. 2d 1105, 1115 (C.D. Cal. 2011) ("The Court is not persuaded that *Wal-Mart* alters the first-tier inquiry for FLSA certification decisions."); *MacGregor v. Farmers Ins. Exch.*, No. 2:10-CV-03088, 2011 WL 2981466, at *4 (D.S.C. July 22, 2011) (applying *Wal-Mart* to an FLSA case), the Court finds the principle of discretion in *Dukes* to be generally relevant here. The live-ins have agreed to basic duties in their agreements with Defendant, but Defendant has given live-ins ample discretion in determining how to perform those duties, how often to be present on the premises, and how to respond to resident requests. Further, Defendant's asset managers certainly must use varying approaches in supervising live-ins according to the unique circumstances of each property.

Finally, along with actual hours worked and duties performed, the value of "free rent" might vary greatly depending on the location of each property. In *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013), the Supreme Court held that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at 1433. Although "damage calculations alone cannot defeat class certification," *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987 (9th Cir. 2015) (citing *Leyva v. Medline*, 716 F.3d 510, 513–14 (9th Cir.2013), they present an additional factor that weighs against Plaintiffs. Calculating

damages that produce a class-wide result would be inappropriate due to the substantial variation in the value of rent at each property and the actual hours worked by the putative plaintiffs.

Plaintiffs have not made substantial allegations that they are similarly situated to the putative class members as victims of a single decision, policy, or plan. Although the Court is denying certification of the collective action, Plaintiffs can use discovery to identify additional potential plaintiffs. Plaintiffs submitted a proposed notice and a consent to join form it wishes to send to putative class members. Defendant has objected to certain portions of the proposed notice. Because the Court is not certifying the collective action, it need not address these issues.

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiffs' Motion for Circulation of Notice Pursuant to 29 U.S.C. § 216(b) (ECF No. 18) is DENIED.

IT IS SO ORDERED.

Dated: This 26th day of January, 2016.

_____
ROBERT C. JONES
United States District Judge